Argued September 17; reversed October 13, 1931

# MUMPER *v.* WEBSTER
(3 P. (2d) 753)

*T. B. Handley* and *W. C. Campbell,* both of Portland, for appellant.

*Howard P. Arnest,* of Portland, for respondent.

RAND, J. This is an action for alienating the affections of Frank Alfano, plaintiff's former husband, from whom she is now divorced. Upon the trial of the cause before the court and jury, plaintiff, over the objections of defendant, was permitted to prove the following declarations alleged to have been made by Alfano:

Charles Bossio testified as follows:

"The conversation was that Frank Alfano told me that he was in kind of a bad boat. I said, 'What do you mean?' 'Why,' he said, 'I think Vida is pregnant.' 'Well,' I says, 'You will have to marry the girl, that is all.' He said, 'How can I? I didn't get my divorce yet.' 'Well,' I said, 'It is up to you.' I said, 'How did you know?' He said, 'Well, Vida told me.' He said, 'You know Vida was a nurse and she told me.' "

"That this woman promised to make him real happy; they would have a family and have a better home, and she would be home to take care of him and prepare the meals and treat him a hundred times better than Margaret ever thought about it."

"That was the reason; he said he left her because he felt he couldn't have any family with the present wife, and this other lady had promised him a family and he was inclined to have a family, and that is why."

Mary Bossio testified as follows:

"Well, he was telling me that Vida Webster promised him a car and was going to have a baby for him and all that."

Minnie Florence testified:

"I merely said to Mr. Alfano that I was terribly sorry to hear that their little home had been broken up, and he said, 'Well, Mrs. Florence, I don't know what ever caused this other than that Mrs. Webster.' In fact, he referred to Mrs. Webster as 'that woman.'

"He said, 'Other than that woman had an awful hold on me and that she poisoned my mind against

Margaret.' I said, 'Well, Frank, how could you let such a thing happen?' I said, 'You know Margaret.' He said 'Yes, I know; there is no comparison between the two women.' 'Well,' I said, 'It is a terrible thing, and anything that I might do to bring this little family together again, I certainly would be glad to do.' That was our conversation at that time."

Agnes Snyder testified as follows:

"He said that his friend Vida had poisoned his mind to such an extent that he made life miserable for his wife, which forced her to get a divorce from him, for which he was sorry, and he wanted me to make arrangements with his former wife so she would come down and see him, which I did."

"Wherever the bodily or mental feelings of an individual are material to be proved," says Greenleaf, "the usual expressions of such feelings, made at the time in question, are also original evidence. If they were the natural language of the affection, whether of body or mind, they furnish satisfactory evidence, and often the only proof of its existence; and whether they were real or feigned is for the jury to determine": Greenleaf on Evidence, section 162a.

And said the court in *Roesner v. Darrah,* 65 Kan. 599 (70 P. 597), "when the inquiry involves the existence of a bodily or mental state, the declarations of the party, when under the influence of the physical or mental feeling in question, and disclosing his subjection to it, are not hearsay, but are original evidence." This excerpt from the opinion in the Kansas case was quoted with approval in *Coles v. Harsch,* 129 Or. 11 (276 P. 248).

In an action for the alienation of affections, the relations which existed between the husband and wife before the separation, the effect produced upon the

mind of the deserting spouse by the conduct of defendant and the motives, feelings and emotions which prompted the desertion are all competent matters to be proved. In making proof of them, it is well settled that plaintiff may show declarations made in the absence of defendant by the deserting spouse where such declarations tend to show the mental state or condition of the deserting spouse in respect to either or any of said matters. To be competent, however, the declarations must have been made at or about the time of the separation and during the period of alienation and the declaration must be one which is "a natural and spontaneous verbal manifestation of an emotion" and be "indicative of the feeling that inspired it": *Pugsley v. Smyth,* 98 Or. 448 (194 P. 686) ; *Schneider v. Tapfer,* 92 Or. 520 (180 P. 107). And, unless the declaration or utterance sought to be proved was the natural and spontaneous manifestation of some emotion, feeling or motive which actuated the deserting spouse in transferring his affections to the defendant and to which he was subject at the time, evidence of such declaration or utterance would be incompetent and purely hearsay unless made in the presence of the defendant. This necessarily renders inadmissible any declaration of the deserting spouse made in the absence of the defendant, which is only a narration of past motives already acted upon and emotions and feelings, the force of which has already been spent.

■ The declarations objected to were made after declarant had deserted plaintiff and the alienation had occurred. They were, therefore, a mere narration of a past mental condition and not the natural and spontaneous expression of a present emotion, feeling or motive and, hence, not having been made in the presence of the defendant, were hearsay. Such was the

ruling in the Pugsley case, where declarations made by plaintiff's wife that her relations with the defendant had been adulterous, and that defendant had promised to provide her with anything she wanted so far as money would buy, and that he was going to buy himself a new roadster and let her have the use of it whenever she wanted it, and that they were going to be very happy were held to be inadmissible and not within the exception to the hearsay rule. The application of the principles stated in that case necessitates a reversal of this judgment.